**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEAN JONAS CHARLES,<br><br>Petitioner,<br><br>v.<br><br>ANGELA HOOVER, *et al.*,<br><br>Respondents. | No. 4:26-CV-00873<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 6, 2026**

Jean Jonas Charles has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") since June 4, 2025.[1] Charles is currently detained at the Clinton County Correctional Facility within the Middle District of Pennsylvania.[2] On April 6, 2026, Charles filed a petition under 28 U.S.C. § 2241, asserting that his continued detention violated his rights under the Due Process Clause.[3] The Court granted that petition and directed the Government to either release Charles or provide him with an individualized bond hearing at which he may present evidence.[4]

---

1 Doc. 7-2, at 3; *see* Doc. 1, at 1, Doc. 7, at 2. The Court notes that in his § 2241 petition, Charles states that ICE detained him on July 4, 2025. Respondents list Charles's date of detention as June 4, 2025. The Court relies on Respondents' submitted I-213, which lists Charles's first contact with ICE Enforcement and Removal Operations Williamsport (ERO Williamsport) on June 4, 2025.

2 Doc. 7-2, at 3.

3 Doc. 1.

4 Doc. 9; Doc. 10.

On May 5, 2026, an immigration judge ("IJ") held a bond hearing and denied Charles's bond request.[5] Charles now moves for this Court to enforce its judgment.[6] A review of the available evidence demonstrates to the Court that, while the bond hearing appears facially to have been individualized, the analysis provided by the IJ was insufficient to satisfy the requirements of the Due Process Clause. Consequently, the Court will grant Charles' motion.

## I. BACKGROUND

Charles, a citizen and native of the Republic of Haiti, first entered the United States in September 2021.[7] Soon thereafter, Charles either voluntarily returned or was subject to expedited removal proceedings.[8] The record is unclear.[9] On July 10, 2024, however, Charles again entered the United States of America and received humanitarian parole through the United States Department of Homeland Security's ("DHS") CBP One application.[10] That parole expired on April 18, 2025.[11] On June 4, 2025, Charles was arrested and detained by ICE.[12] ICE refused him a bond hearing, asserting that he was subject to mandatory detention. On April 6, 2026, Charles filed a petition under 8 U.S.C. § 2241 contesting his detention.[13] Later that

[5] Doc. 18, at 2.
[6] Doc. 11.
[7] Doc. 18-2, at 9.
[8] *Id.*
[9] *Id.*
[10] Doc. 1, at 1; Doc. 18-2, at 9.
[11] Doc. 1-8, at 1.
[12] Doc. 7-2, at 3.
[13] Doc. 1.

month, the Court held that ICE had improperly detained Charles under 8 U.S.C. § 1225(b) and that denial of a bond hearing violated his due process rights.[14] Consequently, the Court ordered an individualized bond hearing.[15]

During the hearing on May 5, 2026, Charles submitted documentation related to his fixed address, employment, community ties, and prior entries.[16] Specifically, Charles offered letters of support from his landlord, employer, and nonfamily friends.[17] The IJ acknowledged several of these favorable factors, including future offers of employment, compliance with immigration procedures through CBP One, and evidence of a lease with his wife.[18] However, while the IJ determined that Charles would not be a danger if released on bond, the IJ concluded that Charles failed to demonstrate that he was not a flight risk.[19] The IJ noted three relevant factors: (1) Charles's prior undocumented entry in 2021; (2) his limited family ties to the United States; and (3) his denied, but timely appealed, application for relief.[20]

Following the IJ's determination, Charles filed this motion to enforce the Court's prior judgment on June 12, 2026.[21] Charles asserts the IJ failed to provide an individualized assessment before deeming him to be a flight risk.[22] Accordingly,

---

[14] Doc. 8; Doc. 9.
[15] Doc. 9.
[16] Doc. 18-2, at 5.
[17] Doc. 11-1; Doc. 11-2; Doc. 11-3; Doc. 11-4.
[18] Doc. 18-2, at 5, 9.
[19] *Id*. at 8-9.
[20] *Id*. at 9.
[21] Doc. 11.
[22] *Id*. at 2-3.

Charles contends that the bond hearing failed to satisfy neither this Court's Order nor the Due Process Clause of the United States Constitution.[23] In opposition, Respondents state that this Court lacks jurisdiction to consider Charles's motion and, in any event, the motion fails on its merits.[24] Respondents also argue that because the Board of Immigration Appeals (BIA) dismissed Charles' appeal on September 4, 2026, he is now subject to a lawful final order of removal.[25] Consequently, Respondents reason that Charles must be held in custody pursuant to 8 U.S.C. § 1231 for the pendency of the 90-day removal period. As for jurisdiction, Respondents rest their argument on two grounds: first, on 8 U.S.C. § 1226(e), which they argue strips this Court of jurisdiction;[26] and second, the requirement that Charles exhaust his administrative remedies.[27] Separately, Respondents also argue that the bond hearing was sufficiently individualized to comport with due process and the Court's prior Order.[28]

On June 23, 2026, Respondents appealed the Court's Order granting Charles's habeas petition.[29] On August 19, 2026, the Court stayed consideration of the instant motion pending the disposition of the appeal.[30] On September 9, 2026, the United

---

23 *Id*.
24 *See* Doc. 18.
25 *Id*. at 3 (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).
26 *Id*. at 3-5.
27 *Id*. at 5-6.
28 *Id*. at 6-10.
29 Doc. 12.
30 Doc. 15.

States Court of Appeals for the Third Circuit dismissed Respondents' appeal pursuant to Fed. R. App. P. 42(b).[31] The Court lifted its stay on September 25, 2026, with Respondents submitting their brief three days later.[32] The motion is now ripe for disposition. For the reasons discussed below, the motion will be granted.

## II. DISCUSSION

### A. Jurisdiction

The Government first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[33] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[34]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[35] Stated differently, although courts "lack jurisdiction to review any discretionary determinations

31 Doc. 16.
32 Doc. 17.
33 Doc. 18, at 3-5.
34 8 U.S.C. § 1126(e).
35 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[36]

And beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[37] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[38] Charles challenges both the constitutional sufficiency of the bond hearing and maintains that the hearing failed to comply with the Court's Order granting his petition for a writ of habeas corpus.[39] Both arguments fall within exceptions to § 1226(e)'s bar on review of a bond determination, and that Section therefore does not divest this Court of jurisdiction to consider Charles's motion.

The Government next argues that Charles has failed to exhaust his administrative remedies related to the bond hearing, and therefore this Court should decline to review the motion.[40] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several

---

36 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

37 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

38 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

39 *See* Doc. 11.

40 Doc. 18, at 5-6.

decisions in this district reaching conflicting conclusions about whether exhaustion is required."[41]

The Court need not determine whether exhaustion of administrative remedies is required because, even when exhaustion is necessary, courts will not enforce that requirements if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[42] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[43]

Assuming that Charles was required to exhaust his administrative remedies, that requirement would be excused here for two reasons. First, as outlined above, exhaustion would be futile since the BIA likely would not take up the constitutional question. Second, as discussed below, the IJ's actions violated Charles's due process rights. Accordingly, the Court finds that Charles was not required to exhaust his administrative remedies, and it has jurisdiction to consider the merits of this motion.

---

41 *Shonhai v. Lowe*, No. 3:24-CV-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

42 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

43 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

### B. Applicable Standard

Respondents also note that the BIA dismissed Charles's appeal after the bond hearing, rendering the removal order as final.[44] Respondents contend that Charles is accordingly subject to "post-order" detention pursuant to § 1231, which provides for detention within the 90-day mandatory removal period.[45] Upon dismissal of his appeal then, Charles's circumstances would have shifted from pre-final order detention under § 1226(a) to post-final order of removal detention under § 1231(a). If so, Respondents presumably maintain that Charles's bond hearing challenge under § 1226(a) must be dismissed as moot.[46]

But the "sole exception to this rule occurs where a final removal order is either judicially stayed by the appropriate court of appeals or overturned by that court of appeals, in which case detention will revert to the pre-final order statute."[47] On September 11, 2026, the Third Circuit temporarily granted Charles's motion for a

---

44 Doc. 18, at 3.

45 *Id.*

46 *Ufele v. Holder*, 473 F. App'x 144, 146 (3d Cir. 2012) (citing *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 947 (9th Cir. 2008)); *see also Alvarez v. Warden*, No. 26-2766, 2026 WL 2601639, at *1 n.1 (D.N.J. Sept. 2, 2026) (finding that because "Petitioner is subject to a final order of removal, [ ] any challenge to the propriety of the prior detention period under 8 U.S.C. § 1226(a) would be moot because Petitioner is now subject to detention under § 1231(a).").

47 *Cuellar-Quijada v. Soto, et al.*, No. 26-1254, 2026 WL 2665705, at *1-2 (D.N.J. Sept. 10, 2026) (citing *Leslie v. Att'y Gen. of the United States*, 678 F.3d 265, 268-70 (3d Cir. 2012)); *see also K.A. v. Green*, No. 17-3542, 2018 WL 1087503, at *2-3 (D.N.J. Feb. 27, 2018) (pursuant to Third Circuit precedent, "[a] petitioner's detention will only revert to pre-final order status . . . when there is a judicially ordered stay of removal in place or his final order of removal has otherwise been undone.").

stay of removal.[48] This Court notes that Respondents neglected to mention the stay in their brief in opposition, which Respondents filed more than two weeks after the Third Circuit's Order. Nevertheless, the Third Circuit has been clear that "an alien, subject to and within a stay of removal, cannot yet be in the removal period for § 1231 purposes."[49] Because the Third Circuit has issued a stay of removal, Charles's detention is therefore subject to § 1226(a), not § 1231. The instant claims regarding Charles's May 5, 2026 bond hearing are not moot.

### C. Merits

Turning to the merits, Charles alleges that the IJ failed to provide an individualized assessment before concluding that he posed a flight risk.[50] Respondents counter by stating that the IJ conducted an individualized bond hearing in accordance with the Court's Order.[51]

"[T]hroughout all phases of deportation proceedings, petitioners must be afforded due process of law."[52] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[53] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity

---

48 *Charles v. Att'y Gen. U.S.,* 26-2232, Stay of Removal ECF No. 6 (3d Cir. Sept. 11, 2026).
49 *Leslie*, 678 F.3d at 270 (internal quotation marks omitted).
50 Doc. 11, at 2-3.
51 *Id*. at 6-10.
52 *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
53 *Id.* (internal quotation marks omitted).

to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[54] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[55]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[56] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[57] However, to the extent that Petitioner challenges how the IJ weighed the evidence presented, such an argument "challenges a discretionary determination" that the Court may not review.[58]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[59] "'Mechanistic reliance

---

54 *Id.* (brackets and internal quotation marks omitted).
55 *Id.* (internal quotation marks omitted).
56 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F. 3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).
57 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).
58 *Ghanem*, 2022 WL 574624, at *2.
59 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

on factors that are common to all § 1226([a]) detainees will not suffice.'"[60] The BIA has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including but not limited to: whether the petitioner has a fixed address, the strength of the petitioner's family ties to the United States, and the petitioner's employment history.[61]

Here, Charles's bond hearing was constitutionally deficient because the IJ failed to provide an individualized determination related to Charles's flight risk. To reiterate, the IJ relied on three reasons to find that Charles was a flight risk: (1) Charles's prior undocumented entry; (2) his limited family ties; and (3) his denied, but appealed, application for relief.[62]

---

60 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

61 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit have held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors may be considered by the IJ. *See Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026).

62 Doc. 18-2, at 8-9.

First, the Court considers Charles's undocumented entry in 2021. Of course, prior compliance with immigration laws can be a relevant, valid consideration when determining flight risk.[63] Noncompliance is relevant insofar as it suggests a likelihood for a detainee to evade or frustrate future immigration proceedings.[64] However, like all factors, "mechanistic reliance . . . will not suffice," and the IJ must engage with the underlying circumstances to render an individualized consideration.[65] Here, after his 2021 entry, Charles either voluntarily returned to his point of origin or was subject to expedited removal proceedings.[66] While these circumstances did not give Charles an independent legal right to enter the United States, they rebut a general presumption that Charles's 2021 entry showed an active willingness to evade *future* law enforcement proceedings. If anything, the nature of Charles's removal in accordance with the laws of the United States—along with his subsequent compliance with immigration laws by properly applying through DHS's CBP One application—would suggest the contrary.

But the IJ failed to ask any specific questions regarding Charles's prior entries into the United States. For instance, while the IJ acknowledged that Charles had been removed after his 2021 entry, the IJ did not attempt to examine whether Charles

---

63 *Guerra*, 24 I. & N. Dec. at 40.

64 *See Matter of A-L-S-*, 29 I. & N. Dec. 794, 797 (BIA 2026) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021)).

65 *Santos*, 2020 WL 4530728, at *3 (quoting *Wilkins*, 2018 WL 3388032, at *2).

66 Doc. 18-2, at 9.

voluntarily returned to Haiti or whether he was subject to expedited removal.[67] That distinction would surely be relevant in assessing a detainee's future likelihood to comply with future immigration proceedings. But without any explanation as to why the IJ discounted that nuance among others, the Court must conclude that the IJ failed to consider them. Accordingly, the IJ's examination relied on Charles's undocumented entry alone. That is a factor common to nearly all individuals receiving a bond hearing pursuant to § 1226(a) and cannot support the denial of bond as a generalized concern.[68] That cannot be individualized determination that Charles is entitled to.

The IJ also cited Charles's denied application for relief as the "biggest concern to the court."[69] At the time, Charles had been appealing the denial before the BIA.[70] Like undocumented entry, an IJ may properly consider a denial of a detainee's application for relief.[71] But because Charles's appeal remained pending at the time, any determination on his application for relief was not final. An IJ is accordingly required to assess the actual existence and substance of that pending avenue for relief.[72] But here, the IJ heard argument on Charles's pending appeal only after

---

67 *Id*.
68 *Santos*, 2020 WL 4530728, at *3.
69 Doc. 18-2, at 9.
70 *Id*.
71 *Guerra*, 24 I. & N. Dec. at 40.
72 The Court acknowledges that when considering likelihood of relief on appeal, an IJ need not conduct a full merits review of the issue itself. *Chen v. Rose*, No. 26-CV-0501, 2026 WL 473347, at *2 (E.D. Pa. Feb. 19, 2026). Nor is it the role of this Court to do so. However, the IJ's consideration must rest on sufficient factual findings specific to the detainee rather than a

asking counsel for "any factors" or general last comments.[73] The IJ failed to even discuss the likelihood of success on appeal despite Charles's assertion of a "good" or "viable" claim.[74] Further, despite being the IJ's "biggest concern," the asserted weakness of Charles's application for relief lacked any accompanying evidence showing limited stability and community ties.[75] To the contrary, Charles presented affirmative evidence of a fixed residence, continuous employment into the future, and community ties.[76] Even accepting the prior denial as an adverse consideration, the IJ provided no explanation as to why that factor overcame other valid factors. Without explaining an even basic connection between Charles's denied application for relief and the IJ's flight risk finding, the IJ simply cited the denial as "a factor for the court to consider, as far as the speculative nature of the relief sought."[77] That is more akin to the "mechanistic reliance" that courts have rejected, and distinct from the individualized assessment that Charles was entitled to.[78]

---

conclusory characterization of the claims as speculative or unlikely. *Santacruz,* 2026 WL 2691657, at *4; *see also Chen*, 2026 WL 473347, at *2 (upholding an IJ's determination based on specific facts presented on the record and governing laws that presumptively barred the detainee's asylum claim). An appellate posture does not eliminate the requirement that the IJ's reasoning must be "specific to the Petitioner, based on facts presented by the parties, and [have] a rational basis." *Chen*, 2026 WL 473347, at *2; *see also A-L-S-*, 29 I. & N. Dec. at 798 (noting that IJs "should [ ]assess flight risk based on the totality of the record, including the existence *and substance of any applications for relief* . . . and the extent to which any asserted forms of relief meaningfully bear on the respondent's likelihood of attendance at future proceedings and compliance with future orders.") (emphasis added).

73 Doc. 18-2, at 6-8.
74 *Id*. at 8.
75 *Id*. at 9.
76 *Id*.
77 *Id*.
78 *Santos*, 2020 WL 4530728, at *3 (quoting *Wilkins*, 2018 WL 3388032, at *2).

Finally, the Court considers the IJ's last reason for bond denial: limited family ties. A detainee's family ties are a relevant factor in a flight risk determination.[79] But family ties, like with other factors, must be considered in tandem with other circumstances. True, IJs may weigh certain factors more heavily than others.[80] But IJs may not fixate on certain factors to the extent that they entirely ignore others. The analysis must remain individualized and specific to the record. Therefore, as in this instance, where a detainee offers evidence of a fixed residence, employment, pending applications, and a spouse residing in the United States, an IJ must at least explain his finding in the context of such mitigating circumstances. The IJ's summation of positive evidence, or a mere recital of the *Guerra* factors, is insufficient without an actual engagement of the evidence or the factors. Without some insight or explanation as to the analysis itself, the "Court is left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors. The Court must conclude that the immigration failed to do so . . . ."[81] Therefore, in the absence of other valid factors suggesting flight risk or—at the very least—an explanation for how the IJ weighed the evidence before him, the IJ's reliance on limited family ties cannot suffice.

---

79 *Guerra*, 24 I. & N. Dec. at 40.

80 *Id*. ("The Immigration Judge may choose to give greater weight to one factor over others, *as long as the decision is reasonable*.") (emphasis added).

81 *Vasquez Lopez v. Hernandez*, 830 F.Supp.3d. 1097, 1103 (W.D. Wa. 2026).

In sum then, the IJ's flight risk finding was supported by no legitimate evidence or considerations. While this Court may not second guess an IJ's determination, the absence of any legitimate support for the decision means "the exercise of discretion in denying bond was so arbitrary that it . . . offend[ed] fundamental tenets of due process."[82]

Consequently, the Court must conclude that the bond hearing below violated Charles's due process rights and failed to comply with this Court's Order. The Court will therefore grant Charles's motion.

**D. Remedy**

Having concluded that Charles's bond hearing failed to comply with the Court's Order and was constitutionally deficient, this Court must determine what remedy is appropriate. Respondents have "now violated [Charles's] due process rights twice: first when [Respondents] initially detained him unlawfully under § 1225(b), and then again when [Respondents] deprived him of a constitutionally adequate bond hearing."[83] Moreover, Charles has been detained by ICE for over a year, all of which indicates that "release is the only just remedy."[84] The Court

---

[82] *Romero v. Ogle*, No. 1:21-CV-01192, 2021 WL 8362027, at *3 (M.D. Pa. Nov. 12, 2021) (quoting *Serrano-Vargas v. Lowe*, No. CV 3:17-0801, 2019 WL 3003382, at *2 (M.D. Pa. July 10, 2019)).

[83] *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *8 (D.N.J. Mar. 23, 2026).

[84] *Id.* at *11.

therefore finds that the appropriate remedy in this matter is to direct that Respondents release Charles from custody.

## III. CONCLUSION

For the foregoing reasons, Charles's motion to enforce the judgment will be granted, and he will be ordered released from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge